# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Taylor*, 2012 IL App (2d) 110222

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNELL M. TAYLOR, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0222 |
| Filed | June 27, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A conviction for obstruction of justice could not stand where defendant's brief attempt to resist arrest on an outstanding warrant by giving the officer a false name did not interfere in any material way with his arrest and did not impede the administration of justice. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 09-CF-582; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Thomas A. Lilien and Josette Skelnick, both of State Appellate Defender's Office, of Elgin, for appellant.

Clay Campbell, State's Attorney, of Sycamore (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Bowman and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    This case raises the issue of whether a person may be convicted of obstruction of justice (720 ILCS 5/31-4 (West 2008)) where he attempts to obstruct justice but his attempt is unsuccessful and does not interfere in any material way with the police investigation. We hold that, under the circumstances present here, such a conviction cannot stand.

¶ 2                                    BACKGROUND

¶ 3    On the evening of October 22, 2009, the defendant, Donnell Taylor, had just left his dorm and was crossing a street in De Kalb when he was approached by police officers. At trial, De Kalb police officer Paul Mott testified that he had been driving past with his partner, Officer Keith Ehrke, when he saw Taylor, whom he recognized from previous encounters. (Mott had arrested Taylor before for jaywalking in the same area.) Mott had been informed that Taylor was wanted on a warrant from De Kalb County, and Taylor's photo was on the visor of the squad car along with photos of other persons who were wanted on warrants. (The case in which the warrant had been issued was a misdemeanor case in which Taylor pled guilty and had missed the court date for paying his fine.) After Mott saw Taylor, the police ran a records check through the state computer system and confirmed that the warrant was still active.

¶ 4    Mott testified that he approached Taylor and asked Taylor for identification even though he was "pretty sure" it was Taylor, because Taylor "could have had a brother or something" and he was not "100 percent" sure it was Taylor. Mott testified that Taylor said that he did not have any identification on him and that he was Keenan T. Smith and his birth date was December 26, 1987. Mott ran that information through the computer system. The search did not show that any such person existed. Mott then told Taylor that there was no Keenan Smith in the system and said, "Listen, you're going to be arrested for giving us false information. I know you're Donnell. This is your chance to tell the truth." Mott testified that Taylor

-2-

repeated his assertion that he was Keenan Smith. According to Mott, they continued talking for a few minutes and then Mott said, "Hey, Donnell," and Taylor looked up and said, "Yeah?" Mott then arrested him. Mott stated that, as he was starting to arrest Taylor, Taylor tried to pull away. Ehrke came to Mott's assistance, and within about 30 seconds the officers were able to put Taylor in handcuffs. According to Mott, the entire encounter from first approaching Taylor to handcuffing him took "under ten minutes." They transported him to the police station, at which point they searched him and found identification with his correct name. Ehrke also testified, confirming this version of events.

¶ 5     Taylor testified at trial and conceded that he initially gave Mott a false name. Taylor said that he did so because he was a college student at the time, he did not have the money to pay the fine, and he was worried about having to go back and forth to court, which had caused him to lose a job in the past. However, according to Taylor, the police officers did not believe him when he said that he was Keenan Smith and they placed him in the back of their squad car almost immediately. They told him that they would give him one more chance to tell the truth or they would charge him with attempted obstruction of justice. Taylor testified that he then told them his real name and gave them his state identification card. According to Taylor, he did so voluntarily; it was not the result of Mott calling him Donnell and him responding. Taylor stated that he realized that he had made a mistake in giving the false name and he decided to cooperate. Taylor denied that he was ever handcuffed or that he resisted arrest. Taylor agreed that the entire incident took between 5 and 10 minutes.

¶ 6     Taylor was charged with obstruction of justice by furnishing false information to Mott (giving a false name and telling Mott that he did not have any identification on him) (720 ILCS 5/31-4(a) (West 2008)) and resisting a peace officer (720 ILCS 5/31-1 (West 2008)). A jury trial was conducted on January 10, 2011. The sole witnesses were Mott, Ehrke, and Taylor, all of whom testified as discussed above. The jury found Taylor guilty of obstructing justice but acquitted him of resisting a peace officer. On February 23, 2011, the trial court sentenced Taylor to 24 months of probation and 44 days of jail time with credit for the 22 days Taylor had already served. Taylor filed a timely notice of appeal.

¶ 7                                                                   ANALYSIS

¶ 8     On appeal, Taylor argues that the evidence was insufficient to support his conviction for obstruction of justice, because the evidence showed that his conduct of initially giving Mott a false name did not materially impede the investigation. In any challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985); *People v. Mills*, 356 Ill. App. 3d 438, 444 (2005). The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991); *Collins*, 106 Ill. 2d at 261. This standard applies whether the evidence is direct or circumstantial and whether the judgment is the result of a jury trial or a bench trial. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 9    To prove that Taylor obstructed justice, the State was required to prove beyond a reasonable doubt that he violated section 31-4(a) of the Criminal Code of 1961 (Code), which provides:

> "A person obstructs justice when, with the intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information[.]" 720 ILCS 5/31-4(a) (West 2008).

In this case, the State alleged that Taylor obstructed his own apprehension (that is, his arrest on the warrant) by giving Mott a false name and claiming that he did not have identification. Taylor admitted at trial that he did give Mott a false name, at least at first. Moreover, he does not contest in this appeal that he had the necessary intent. Taylor argues, however, that his actions cannot amount to obstruction of justice, because they did not materially impede Mott's investigation–Mott completed his arrest of Taylor within 5 to 10 minutes despite Taylor's initial false statements about his own identity.

¶ 10    In support of this argument, Taylor cites *People v. Comage*, 241 Ill. 2d 139 (2011). In that case, the defendant had been convicted of obstruction of justice after he took a crack pipe out of his pocket and threw it over a six-foot wooden fence while running from police officers. The officers saw him throw the pipe and recovered it within about 20 seconds. The supreme court reversed the conviction, holding that the word "conceal" in section 31-4(a) was not intended to encompass such a brief removal of evidence from the view of police. *Id.* at 148. In reaching this conclusion, the court cited case law from other states criticizing attempts by prosecutors to make a felony out of a minor possessory offense by adding an obstruction of justice charge whenever the defendant engaged in an unsuccessful attempt to conceal contraband. Our supreme court similarly rejected the State's argument that even a brief concealment of evidence must be considered obstruction of justice, stating that, "in enacting section 31-4, the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that 'obstructs prosecution or defense of any person.' " (Emphasis in original.) *Id.* at 149. The court went on to make it clear that a defendant "actually interferes with the administration of justice" where he or she "materially impedes" police officers' investigation. *Id.* at 150.

¶ 11    Taylor seeks to apply the holding of *Comage* that, to constitute obstruction of justice, a defendant's actions must actually interfere with, that is, materially impede, the police investigation. He argues that his giving of a false name to Mott and denying that he had identification did not actually interfere with Mott's investigation at all because Mott always knew who he was. Taylor also argues that, even if his false statements delayed his own arrest by a few minutes while Mott checked the false name on the computer system, the delay was so insubstantial that it does not comport with the legislature's goal in enacting the obstruction of justice statute, that is, criminalizing conduct that in fact interferes with the administration of justice.

¶ 12    The State argues that *Comage* is distinguishable because it involved a defendant's attempted concealment of evidence as opposed to the giving of false information to a police

officer. In support, the State relies on *People v. Davis*, 409 Ill. App. 3d 457 (2011), a case from the Fourth District of the Appellate Court that involved false statements and likewise distinguished *Comage*. In *Davis*, the defendant falsely told police that her boyfriend was not at her house when the police arrived and asked if he was there. A few minutes later, however, after speaking privately with her brother, the defendant began crying and said that her boyfriend was there and that she knew there were warrants for his arrest. She allowed the police to search her house. The police found the boyfriend hiding in the attic and arrested him. The defendant was charged with obstruction of justice. At trial, her defense focused on showing that she lacked the necessary intent to mislead the police, because she did not realize that her boyfriend was there until her brother told her so. She was found guilty following a bench trial. *Id.* at 458-59. On appeal, she argued that there was insufficient evidence to support her conviction, in part because her initial falsehood did not materially impede the investigation, as required by *Comage*.

¶ 13    The *Davis* court distinguished *Comage*, reasoning that the act of the defendant in *Comage*–momentarily placing evidence out of sight–did not "make recovery of the evidence substantially more difficult or impossible." *Id.* at 462. In fact, the *Davis* court viewed the likelihood that the defendant's actions in *Comage* would compromise the evidence as "virtually nonexistent." *Id.* By contrast, the *Davis* court found that the conduct of the defendant there in furnishing false information posed an "exceedingly high" risk that the police investigation would be compromised. *Id.* The court found that the defendant's false statements were intended to allow her boyfriend to escape apprehension, and that this might have occurred if the defendant's conversation with her brother had not apparently led her to believe that her brother would " 'spill the beans.' " *Id.* Accordingly, the court found that the defendant's actions did impede the investigation, and it upheld the defendant's conviction.

¶ 14    The State argues that *Davis* is directly on point and that this case is similarly distinguishable from *Comage*. On the surface, there is a certain factual similarity between this case and *Davis*, in that they both involved an attempt to obstruct justice through false statements rather than concealing evidence. However, as the *Davis* court noted, the relevant inquiry under *Comage* is whether, and to what extent, the defendant's actions actually interfered with the police investigation. We do not read *Davis* as holding that false statements always rise to the level of materially impeding a police investigation while attempting to dispose of evidence does not.

¶ 15    After the briefing for this appeal was largely completed, the supreme court issued an opinion, *People v. Baskerville*, 2012 IL 111056, that examined in a slightly different context the issue of whether a defendant's conduct actually interfered with the administration of justice. We asked the parties to be prepared to discuss *Baskerville*'s significance at oral argument. In *Baskerville*, the defendant was charged with an offense that is akin to obstruction of justice: obstructing a peace officer, in violation of section 31-1 of the Code (720 ILCS 5/31-1 (West 2006)). The defendant had not committed any physical act of obstruction, but he had lied to a sheriff's deputy about the whereabouts of his wife when she had gone into their house after police attempted to stop her for a traffic violation. The defendant initially told the deputy that his wife was not home. A few minutes later, he went into the house and when he reemerged he told the deputy that he did not know what was

going on and that the deputy could enter the house to look for his wife. The deputy declined to do so, and the wife was not served with a citation until a few weeks later. *Baskerville*, 2012 IL 111056, ¶ 7.

¶ 16    The court held that physical acts were not required for a conviction under section 31-1 and that a false statement could constitute obstruction of a peace officer if it "interpose[d] an obstacle" that impeded or hindered the officer in the performance of his authorized duties. *Id.* ¶ 1. The court then went on to consider the sufficiency of the evidence that the defendant's false statements to the deputy actually hindered the deputy's performance of his authorized duties. The court stated that, in this analysis, "the false statement only has legal significance if it *** *actually impeded* an act the officer was authorized to perform." (Emphasis added.) *Id.* ¶ 35. The court found that the defendant's false statement did not hinder the deputy from executing a traffic stop given that the wife entered the home before the defendant ever spoke with the deputy and that the defendant allowed the deputy to enter the home to search for her if the deputy wished to do so. *Id.* The court found that the evidence, taken in the light most favorable to the State, was insufficient to support the conviction of obstructing a peace officer, and it reversed the conviction. *Id.* ¶ 38.

¶ 17    In our view, *Baskerville* confirms that the relevant issue in weighing a sufficiency-of-the-evidence challenge to a conviction for obstruction of justice is whether the defendant's conduct actually posed a material impediment to the administration of justice. Applying that standard here, we find that Taylor's initial giving of a false name to Mott and his denial that he had identification did not materially impede Mott's arrest of Taylor. By all accounts, the entire encounter took no more than a few minutes. Although Mott himself testified that he was not "100 percent sure" of Taylor's identity, he conceded that he was "pretty sure." It was undisputed that Mott arrested Taylor before he ever saw Taylor's state identification card. Mott said that the arrest occurred after Taylor responded when Mott spoke his name; Taylor said that he voluntarily decided to cooperate. Either way, however, it is clear that Taylor's initial lies to Mott did not deter Mott from arresting him: Mott arrested Taylor almost immediately despite Taylor's false statements. Mott's caution in checking the false name Taylor gave against the computer database was commendable, but it did not significantly delay the arrest. Thus, applying the same standard used in *Comage* and *Baskerville*, Taylor's false statements did not actually interfere with or materially impede the police investigation.

¶ 18    We note that, in *Davis*, the court discussed the risk posed by the false statements in evaluating the sufficiency of the evidence showing that the defendant obstructed justice. See *Davis*, 409 Ill. App. 3d at 462 (contrasting the "virtually nonexistent" risk that the evidence would be destroyed in *Comage* with the "exceedingly high" risk that the boyfriend in *Davis* could have escaped apprehension due to the defendant's false statements). Weighing the risk in this manner is not explicitly approved in either *Comage* or *Baskerville*: the analysis in both cases focuses on whether the defendant's conduct actually interfered with, or created an obstacle to, the administration of justice, not whether it might have done so. Assuming for the purpose of argument that the level of risk posed by the defendant's conduct is an appropriate consideration, however, that factor would not help the State here. Even under the facts as recounted by Mott, Taylor's brief lies did not pose any substantial risk that Mott would mistakenly allow Taylor to go free. Thus, this case is distinguishable from *Davis*,

where the court found a high risk that the defendant's false statements would derail the investigation.

¶ 19    The State cites two other cases–*People v. Ellis*, 199 Ill. 2d 28 (2002), and *People v. Remias*, 169 Ill. App. 3d 309 (1988)–to support its argument. In both of these cases, the courts upheld the convictions of drivers who gave false names to police during traffic stops. However, the charge in these cases was *attempted* obstruction of justice, not actual obstruction of justice. It is plain that a court need not consider whether a defendant's false statements actually interfered with the administration of justice when the charge is attempt; in such cases, it does not matter whether the false statements were "successful" in preventing the prosecution of the defendant, only whether they constituted a substantial step toward the obstruction of justice. See 720 ILCS 5/8-4(a) (West 2010). Here, however, as in *Comage*, *Davis*, and *Baskerville*, the State decided to pursue a felony conviction for actual obstruction of justice rather than an attempt charge. That decision raised the bar for what the State had to prove and required us to consider whether Taylor's conduct actually interfered with, *i.e.*, materially impeded, the administration of justice. We conclude that it did not and that his conviction must therefore be reversed.

¶ 20                                CONCLUSION

¶ 21    As the evidence did not establish that Donnell Taylor's conduct actually obstructed justice, we reverse his conviction.

¶ 22    Reversed.