NOTICE
Decision filed 11/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170065-U

NO. 5-17-0065

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Johnson County. |
| | ) | |
| v. | ) | No. 14-CF-8 |
| | ) | |
| ASHLEE POWELL, | ) | Honorable |
| | ) | James R. Williamson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's conviction for obstructing justice is reversed where the State failed to prove the offense's material-impediment requirement; one of the defendant's two convictions for obstructing a peace officer is vacated as violative of the one-act, one-crime rule; the defendant's stipulated bench trial on the State's charge of retail theft was not tantamount to a guilty plea, and we have no jurisdiction to consider the defendant's sentence-credit claim.

¶ 2    Following a bench trial in the circuit court of Johnson County, the defendant, Ashlee Powell, was found guilty on one count of obstructing justice (count I), two counts of obstructing a peace officer (counts II and IV), and one count of retail theft (count III). She was subsequently ordered to serve an 18-month term of imprisonment and pay

1

multiple fines and fees. On appeal, the defendant maintains that her convictions on counts I and III should be reversed and that her conviction on count II or count IV should be vacated. She further argues that she should have received monetary credit towards her fines for time spent in custody prior to sentencing. For the reasons that follow, we reverse the defendant's conviction on count I, vacate her conviction on count II, affirm her convictions on counts III and IV, and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4     On January 10, 2014, the defendant drove her boyfriend's red Dodge Durango SUV to the Casey's General Store in Vienna, pumped $81 worth of gasoline into the Durango's fuel tank, and drove off without paying. A Casey's employee immediately reported the theft to Special Agent Marc Stram of the Illinois State Police, who was inside the store at the time. A vehicle pursuit ensued, and Stram followed the defendant as she turned from U.S. 45 onto Dutchman Lake Road. When Stram caught up with the defendant and activated his car's emergency lights and siren, the defendant did not pull over or slow down. Instead, "she accelerated to a dangerous speed and went around a green vehicle on Dutchman Lake Road." At that point, concluding that the pursuit had become too dangerous, Stram deactivated his lights and siren and proceeded to follow the defendant at a decreased rate of speed.

¶ 5     As Stram subsequently approached the intersection of Dutchman Lake Road and Tunnel Hill Road, he saw the defendant stopped at the stop sign. Before the defendant sped away, Stram was able to get close enough to see the Durango's rear license plate. A

registration check revealed that the license plate was not truly the Durango's and had been issued to a blue Mercury passenger car.

¶ 6 Later the same day, the defendant was arrested in Williamson County after the Durango, bearing its actual license plates, was discovered parked behind a barn on West Borton Avenue in Creal Springs, where the defendant's boyfriend's mother lived. When the defendant was questioned about the gasoline theft at the Casey's, she admitted her guilt and acknowledged that she had put the Mercury's license plate on the rear of the Durango to avoid being identified. The defendant explained that the plate had come from a junkyard and that she knew that it would "come back" to a vehicle other than the Durango. The defendant also acknowledged that the Durango and the plate had been used in other drive-off thefts of gasoline.

¶ 7 In February 2014, the State filed an information charging the defendant with one count of obstructing justice (count I) (720 ILCS 5/31-4(a)(1), (b)(1) (West 2014) (Class 4 felony)), one count of obstructing a peace officer (count II) (*id.* § 31-1(a) (Class A misdemeanor)), and one count of retail theft (count III) (*id.* § 16-25(a)(1), (f)(1) (Class A misdemeanor)). Count I specifically alleged that "to prevent her arrest," the defendant "knowingly planted false evidence in that she drove her vehicle bearing another person's license plate on her vehicle to avoid being identified."

¶ 8 In April 2014, the cause proceeded to a preliminary hearing, where Stram testified as to the events that occurred on January 10, 2014. At the conclusion of the hearing, the defendant orally moved to dismiss count I, arguing that the conduct described therein should have been charged as a violation of the Illinois Vehicle Code. See 625 ILCS 5/3-

3

703 (West 2014) ("Improper use of evidences of registration or certificate of title."). The trial court denied the defendant's motion to dismiss count I, finding that there was probable cause to sustain the charge.

¶ 9 In June 2014, the defendant filed a written motion to dismiss count I, again arguing that the conduct described therein should have been charged as a violation of the Illinois Vehicle Code. The motion further argued that the obstructing justice statute was unconstitutionally vague and that the facts alleged in count I did not properly state a charge of planting false evidence.

¶ 10 In July 2014, the State successively filed two amended informations that realleged counts I, II, and III and added an additional count of obstructing a peace officer (count IV). At a subsequent pretrial hearing, the State advised that count IV was filed as "an alternative theory" of count II.

¶ 11 In March 2015, the cause proceeded to a hearing on the defendant's motion to dismiss count I. In addition to reiterating her vagueness claim and her contention that the conduct alleged in count I should have been charged as a violation of the Illinois Vehicle Code, the defendant argued that even assuming that putting a "false license plate" on a vehicle constituted the planting of false evidence, there was no evidence that her act of affixing the Mercury's plate to the Durango had occurred in Johnson County. Advising that the plate had been placed on the Durango in Williamson County, the defendant argued that Williamson County was the proper venue for count I and that her act of merely driving with the plate in Johnson County was insufficient to support the State's charge.

4

¶ 12    In response, noting that a criminal statute is not required to define its proscribed conduct with "mathematical precision" (*People v. Holt*, 271 Ill. App. 3d 1016, 1026 (1995)), the State argued that the relevant language of the obstructing justice statute was sufficiently definite and readily understandable. The State further argued that even assuming that the defendant had actually placed the Mercury's license plate on the Durango in Williamson County, her act of obstructing justice was completed at the Casey's in Vienna and continued during Stram's subsequent pursuit of the Durango.

¶ 13    When denying the defendant's motion to dismiss count I, the trial court agreed that regardless of where the defendant had actually affixed the Mercury's plate to the Durango, the charged offense was consummated in Johnson County, where her intent to use the plate to steal gasoline without being apprehended was realized. See *People v. Kalwa*, 306 Ill. App. 3d 601, 614 (1999) ("If a crime is partly committed in one county and partly in another, venue is proper in either county.").

¶ 14    In June 2015, the cause proceeded to a stipulated bench trial, where the parties submitted an agreed written summary of the relevant facts of the case. The summary was signed by the parties and stipulated several specific facts, including the defendant's admissions that she had not attempted to pay for the gasoline she obtained and had attached the Mercury's plate to the Durango to make her more difficult to identify. The summary further stipulated that the defendant's act of affixing the plate to the Durango had occurred in Williamson County. By agreement, the trial court was also asked to consider Stram's testimony from the preliminary hearing, a video recording of the defendant's postarrest interview, and the Webster's dictionary's definition of the word

5

"plant." The court was asked to take judicial notice of "everything" in the case file, including the parties' arguments from the previous hearings. The trial court advised that it would take the matter under advisement and would allow the parties to present their closing arguments at a later date.

¶ 15    In September 2015, the parties presented their closing arguments for the trial court's consideration, and the court advised that it had reviewed the video recording of the defendant's postarrest interview. During closing arguments, the State generally maintained it had proven the necessary elements of the charged offenses beyond a reasonable doubt. The State conceded, however, that counts II and IV should be merged.

¶ 16    The defendant's closing argument focused on count I, and at the outset, counsel frankly advised the court that he was "not going to vociferously argue against" counts II, III, and IV. Counsel further advised that although the defendant was not admitting her guilt on counts II, III, and IV, she was conceding that the facts relevant to those charges were "not in dispute." Counsel stated that the defendant would "let the [c]ourt make up its own mind" as to those counts.

¶ 17    Asserting that "[p]utting an incorrect license plate on a vehicle is not obstructing justice," the defendant again maintained that the conduct charged in count I should have been charged as a violation of the Illinois Vehicle Code. The defendant reemphasized that even assuming that putting a "fake" license plate on a vehicle constituted the planting of false evidence, her act of attaching the Mercury's plate to the Durango occurred in Williamson County, as the parties had stipulated. With respect to count I's intent element,

the defendant additionally argued that she had acted with the intent to deceive the employees at the Casey's in Vienna, "not the cops."

¶ 18 At the conclusion of the parties' closing arguments, the trial court found the defendant guilty on all four counts of the State's second amended information. When the court indicated that it would merge counts II and IV as the State had requested, the State asked that judgment and sentence be imposed on count IV.

¶ 19 On February 15, 2017, the cause proceeded to sentencing, where the trial court ultimately imposed an 18-month agreed sentence on the defendant's conviction on count I and concurrent 30-day sentences on counts II, III, and IV. The court further ordered the defendant to pay fines and fees collectively totaling more than $500. Notably, the State indicated that so long as the defendant received the agreed sentence of 18 months on count I, "[w]hatever the [c]ourt want[ed] to do on [the] misdemeanors [was] fine."

¶ 20 On February 16, 2017, the defendant filed a timely notice of appeal. We note that the defendant filed her appellant's brief in November 2018; the State filed its appellee's brief in November 2019; the defendant filed her reply brief in January 2020, and our supreme court issued its decision in *People v. Casler*, 2020 IL 125117, on October 28, 2020.

¶ 21                                DISCUSSION

¶ 22                                 Count I

¶ 23 Section 31-4(a)(1) of the Criminal Code of 2012 (section 31-4(a)(1)) defines the offense of obstructing justice and, in pertinent part, states that "[a] person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution *** of

7

any person, he or she knowingly \*\*\* [d]estroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information." 720 ILCS 5/31-4(a)(1) (West 2014). Here, count I charged the defendant with obstructing justice and alleged that "to prevent her arrest," the defendant "knowingly planted false evidence in that she drove her vehicle bearing another person's license plate on her vehicle to avoid being identified." We note that count I's specific language notwithstanding, the defendant does not dispute that the theory of guilt she defended against was that with the requisite intent, she obstructed justice by affixing the Mercury's plate to the Durango and then using the Durango to commit a drive-off theft of gasoline. Nor does the defendant claim that she was prejudiced by the variance between the charge's language and the proof adduced at trial. The defendant concedes, in fact, that before she drove the Durango to the Casey's in Vienna to commit the theft, she changed the vehicle's license plate to avoid being identified. She argues, however, that her conviction on count I must be reversed because the State failed to present any evidence that her conduct "materially impeded" her subsequent apprehension. We agree.

¶ 24    In *People v. Casler*, 2020 IL 125117, our supreme court "unequivocally" construed section 31-4(a)(1) to include a "material impediment requirement." *Id.* ¶¶ 61, 69. The *Casler* court thereby resolved the split among the appellate court districts as to whether a finding of "material impediment" was necessary to sustain a conviction for obstructing justice. See *id.* ¶¶ 43-53.

¶ 25    In *Casler*, when asked to identify himself, the defendant, who had outstanding warrants for his arrest, gave the police a name that they quickly realized was false. *Id.*

¶¶ 6-10. A jury convicted the defendant of obstructing justice for providing the police with the false name with the intent to prevent his arrest on the warrants, and this court affirmed his conviction on appeal. *Id*. ¶¶ 3, 15-17, 62. On appeal to the supreme court, however, the conviction was reversed because the jury was never tasked with considering whether the defendant's conduct had "materially impeded the administration of justice." *Id*. ¶ 62. After acknowledging that the State had no reason to introduce evidence regarding a material impediment requirement at the defendant's trial because *Casler* constituted a posttrial change in the law, the supreme court remanded the cause for further proceedings. *Id*. ¶¶ 65-67.

¶ 26    Here, *Casler* is controlling, and we agree with the defendant that her conviction on count I must be reversed because the State failed to present evidence that her use of the Mercury's license plate materially impeded the administration of justice. Like the *Casler* court, we recognize that the State had no reason to adduce such evidence at the defendant's trial because the material impediment requirement was not an element of the offense at the time. Nevertheless, the trial court was never asked to consider whether the defendant's use of the "false plate" materially impeded the administration of justice. Moreover, as the defendant observes, "it is not clear from the record how [she] was apprehended by the police." As previously indicated, the evidence at trial established that before the defendant finally eluded Stram, he was able to see the Durango's rear license plate, that a registration check revealed that the plate had been issued to a blue Mercury passenger car, and that later the same day, the defendant was arrested in Creal Springs after the Durango, bearing its actual license plates, was discovered parked behind a barn

9

near her boyfriend's mother's house. Exactly when and how the police discovered the Durango or whether the defendant's use of the Mercury's plate frustrated their efforts to find her were matters never explored, however, and are presently unknown. Accordingly, on remand, if the State wishes to obtain a felony conviction on count I, the State must satisfy the material impediment requirement by proving that the defendant's use of the Mercury's plate materially impeded the administration of justice. In other words, the State must prove that the defendant's use of the plate materially impeded or hindered her apprehension or prosecution. See *Casler*, 2020 IL 125117, ¶¶ 31, 35, 39; *People v. Taylor*, 2012 IL App (2d) 110222, ¶ 17. The State can otherwise request that the trial court reduce the judgment entered on count I to reflect a conviction for the lesser-included offense of attempted obstruction of justice (see 720 ILCS 5/2-9(b) (West 2014) (" 'Included offense' means an offense which *** [c]onsists of an attempt to commit the offense charged[.]"); *Taylor*, 2012 IL App (2d) 110222, ¶ 19 (noting that where attempted obstruction of justice is charged, a court need not consider whether the defendant's conduct actually interfered with the administration of justice); *People v. Walton*, 378 Ill. App. 3d 580, 588 (2007) ("[A] judge presiding over a bench trial may convict a criminal defendant of an uncharged lesser-included offense *sua sponte*.")), the defendant's commission of which the State has already proven through undisputed facts. In any event, in accordance with *Casler*, we hereby reverse the defendant's conviction on count I and remand for further proceedings.

10

¶ 27                          Counts II and IV

¶ 28    In pertinent part, count II of the State's second amended information alleged that the defendant committed the offense of obstructing a peace officer "by failing to stop her vehicle after Trooper Stram activated his emergency lights indicating she was required to stop." Count IV alleged that the defendant committed the same offense "by accelerating her vehicle after Trooper Stram indicated to her that she should stop her vehicle." On appeal, noting that during the proceedings below, the State conceded that counts II and IV should merge, the defendant argues that her convictions on both counts cannot stand under the one-act, one-crime rule. The State counters that convictions on both counts were proper because the charges were not based on precisely the same physical act. While the State's argument with respect to the charges might technically be correct, we agree with the defendant and conclude that the State is estopped from arguing that her convictions on counts II and IV should both be affirmed.

¶ 29    The one-act, one-crime rule "concerns the number of convictions obtainable based on a single act or a series of closely related acts." *People v. Hunter*, 2013 IL 114100, ¶ 21. The rule strictly prohibits convictions for multiple offenses that are based on "precisely the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 13. " 'Act', when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). Consequently, "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *Id.* Each of a victim's stab wounds, for example, can support a

11

separate conviction and sentence without violating the one-act, one-crime rule. *People v. Crespo*, 203 Ill. 2d 335, 342 (2001). It is impermissible, however, for the State to treat closely related acts as a single offense in the trial court and then argue on appeal that the acts should be differentiated as multiple offenses. See *People v. Bishop*, 218 Ill. 2d 232, 245-46 (2006); *Crespo*, 203 Ill. 2d at 342-44. Allowing the State to do so would be "profoundly unfair" (*Crespo*, 203 Ill. 2d at 343), and like any party, the State is estopped from advancing a position on appeal that is inconsistent with the position it adopted below (*People v. Franklin*, 115 Ill. 2d 328, 336 (1987); *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007)).

¶ 30    Here, although the trial court found the defendant guilty on count II and count IV and theoretically could have entered judgment on both counts without violating the one-act, one-crime rule, the record demonstrates that the State never intended to obtain separate convictions and sentences on both counts. As previously noted, in July 2014, the State advised that it had added count IV to its amended informations as "an alternative theory" of count II, as opposed to a separate criminal act. Consistent with that position, when the parties presented their closing arguments in September 2015, the State conceded that counts II and IV should merge. When the trial court agreed to merge the counts, the State asked the court to enter judgment and sentence on count IV. By the time the cause proceeded to sentencing in February 2017, however, 17 months had passed, and the September 2015 discussions were apparently forgotten. As a result, the trial court entered judgment and sentence on both counts. In any event, because the State treated counts II and IV as a single offense in the trial court and requested that a final judgment

be entered solely on count IV, we reject the State's attempt to differentiate the counts as multiple offenses on appeal and vacate the defendant's conviction on count II pursuant to Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967). See *People v. James*, 2017 IL App (1st) 143036, ¶ 59.

¶ 31                                    Count III

¶ 32   Count III of the State's second amended information alleged that the defendant committed the offense of retail theft in that she "knowingly obtain[ed] unauthorized control over gasoline from [the] Vienna Casey's with the intent to permanently deprive Casey's of the gasoline." In the agreed summary of facts that the parties presented at the defendant's bench trial, the parties specifically stipulated that the defendant "never attempted to pay for the gasoline she obtained at Casey's General Store" and "drove away without paying for the gas." As previously indicated, at the defendant's trial, defense counsel advised the court that the defendant was not admitting her guilt on count III but that the relevant facts were "not in dispute."

¶ 33   On appeal, the defendant maintains that her stipulated bench trial on count III was tantamount to a guilty plea because defense counsel did not present a defense against count III, and the stipulated facts "contained all of the elements necessary to find [her] guilty of retail theft as alleged in count III." The defendant argues that her conviction on count III should therefore be reversed. See, *e.g.*, *People v. Davis*, 286 Ill. App. 3d 686, 690 (1997). We disagree.

¶ 34   A stipulated bench trial is tantamount to a guilty plea "when one of two conditions is met: (1) the State presents its entire case by stipulation *and* defendant fails to preserve

13

a defense; *or* (2) the stipulation concedes that the evidence is sufficient to support a guilty verdict." (Emphases in original.) *People v. Clendenin*, 238 Ill. 2d 302, 324 (2010). Here, neither of these conditions were met. Although counsel acknowledged that the facts relevant to count III were not in dispute, he did not concede that the defendant acted with the requisite intent and did not concede that the facts were sufficient to support a guilty verdict. As noted, counsel stated that the defendant would "let the [c]ourt make up its own mind" as to whether she was guilty on count III. As a result, "defense counsel did not stipulate to the legal conclusion to be drawn from the evidence," and "the State still had to prove the defendant's guilt beyond a reasonable doubt." *People v. Horton*, 143 Ill. 2d 11, 21 (1991). Moreover, although counsel did not "vociferously argue against" count III, he nevertheless preserved a sufficiency-of-the-evidence defense by not conceding the defendant's guilt. See *People v. Foote*, 389 Ill. App. 3d 888, 895 (2009) (noting that the defendant's approach "signified his continued intent not to plead guilty"); see also *People v. Taylor*, 2018 IL App (2d) 150995, ¶ 11 (noting that "the nature of the defense does not matter so long as defendant actually preserved a defense"). Additionally, because the trial court was specifically asked to consider Stram's testimony from the preliminary hearing and the video recording of the defendant's postarrest interview, it cannot be said that the State presented its entire case through the parties' stipulated summary of facts. We also note that given the overwhelming evidence of the defendant's guilt, it was reasonable strategy for counsel to focus his efforts on count I, which was the only charged felony offense. See *Horton*, 143 Ill. 2d at 26; see also *People v. Weger*, 154 Ill. App. 3d 706,

710-11 (1987). In any event, we deny the defendant's request that her conviction on count III be reversed.

¶ 35                                    *Per Diem* Credit

¶ 36     A criminal defendant is entitled to credit against his or her sentence for each day spent in pretrial custody. 730 ILCS 5/5-4.5-100(b) (West 2014). Additionally, for each day spent in pretrial custody, a defendant is generally entitled to a *per diem* monetary credit towards any fines levied upon his or her convictions. 725 ILCS 5/110-14 (West 2014).

¶ 37     "Our supreme court has clarified that 'a defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge [for the purposes of custody credit] until his bond is withdrawn or revoked.' " *People v. Nesbit*, 2016 IL App (3d) 140591, ¶ 44 (quoting *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987)). "Once a defendant in that scenario withdraws or surrenders his bond, he is considered in custody on both offenses and earns credit against each for each day in custody." *Id*. (citing *People v. Robinson*, 172 Ill. 2d 452, 459-63 (1996)).

¶ 38     Here, the defendant was arrested on the charges in the present case on January 10, 2014, and was released on bond the same day. In March 2014, in Williamson County case number 14-CF-152, the defendant was arrested on an unrelated charge and ostensibly served 40 days in pretrial custody before she was released on bond in that case. Raising the issue as an ineffective-assistance-of-counsel claim, the defendant's final argument on appeal is that following her arrest in Williamson County, her trial attorney

15

in the present case should have surrendered the bond she posted in January 2014 so that she would have received simultaneous custody credit towards the fines that the trial court ordered her to pay in the present case. The defendant asks that we remand her cause so that the trial court can calculate and apply the monetary credit that she contends she would have received but for counsel's alleged ineffectiveness. Even assuming *arguendo* that the defendant's claim is meritorious, however (see *People v. Nesbit*, 398 Ill. App. 3d 200, 215 (2010) (declining to address a similar claim where the record was silent as to whether the defendant and counsel had ever discussed the matter)), we are without jurisdiction to consider it due to the defendant's failure to raise it in the trial court.

¶ 39    During the pendency of the present appeal, our supreme court adopted and amended Illinois Supreme Court Rule 472 (eff. May 17, 2019) and thereby created a new procedure for the resolution of certain sentencing errors, including errors in "the calculation of presentence custody credit" and errors in "the application of *per diem* credit against fines." Ill. S. Ct. R. 472(a)(2), (3) (eff. May 17, 2019). Pursuant to Rule 472, the circuit court retains jurisdiction to correct such errors during the pendency of an appeal (Ill. S. Ct. R. 472(a)), and "[n]o appeal maybe taken by a party from a judgment of conviction on the ground of any sentencing error specified [in the rule] unless such alleged error has first been raised in the circuit court" (Ill. S. Ct. R. 472(c)). Rule 472 further provides:

> "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this

rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e).

¶ 40    Here, the defendant's appeal was pending as of March 1, 2019, and for the first time on appeal, she alleges a sentencing error covered by Supreme Court Rule 472. As a result, we have no jurisdiction to consider the claim, but on remand, the defendant can file a motion pursuant to Rule 472(e). See *People v. Williams*, 2020 IL App (1st) 163417, ¶¶ 90-94; *People v. Edwards*, 2020 IL App (1st) 170843, ¶ 27; *People v. Scott*, 2019 IL App (1st) 163022, ¶ 26.

¶ 41                                          CONCLUSION

¶ 42    For the foregoing reasons, we hereby reverse the defendant's conviction on count I, affirm the defendant's convictions on counts III and IV, vacate her conviction on count II, and remand for further proceedings.

¶ 43    Affirmed in part, reversed in part, vacated in part, and remanded.