2021 IL App (2d) 190564-U
Nos. 2-19-0564 & 2-19-0579 cons.
Order filed July 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos.  18-CM-1890 |
| | ) ) | 18-TR-34001 |
| TERRY HOLT, | ) ) | Honorable Robert K. Villa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was sufficient to sustain defendant's conviction for obstruction of a peace officer.  Trial counsel's failure to submit definitional and issues instructions on the affirmative defense of impossibility constituted neither plain error nor ineffective assistance.  Affirmed.

¶ 2    Following a jury trial, defendant, Terry Holt, was convicted of speeding and obstruction of

a peace officer (720 ILCS 5/31-1 (West 2018)).  The trial court sentenced defendant to 18 months'

conditional discharge, 100 hours of community service, and costs and fines.

¶ 3    Defendant appeals, arguing that, where his physical disabilities impeded his capacity to exit his vehicle unassisted, the State failed to prove beyond a reasonable doubt that he knowingly obstructed a police officer's command to exit the vehicle.  In addition, defendant argues that we should review for plain error his trial counsel's failure to submit definitional and issues instructions on the affirmative defense of impossibility and that counsel's failure to submit the instructions constituted ineffective assistance.  For the following reasons, we reject defendant's arguments and affirm.

¶ 4                                    I. BACKGROUND

¶ 5    On June 7, 2018, at 3:44 a.m., Illinois State Trooper Piotr Dudek was on patrol on Interstate 90, using his radar to measure the speed of passing vehicles.  The speed limit was 70 miles per hour, but he observed defendant traveling 101 miles per hour.  Dudek followed defendant and activated the overhead lights on his patrol car to signal to defendant to stop.[1]

¶ 6    Defendant was alone in the vehicle.  He explained to Dudek that he had once sustained severe injuries to his arms and legs in a motorcycle accident and that it was difficult for him to reach into his glove compartment.  Defendant explained that his wife helps him in and out of the vehicle.  Dudek believed that defendant had been drinking and driving and asked defendant to step out of the vehicle to perform field-sobriety tests.  Defendant refused to do so.  Dudek informed defendant that he was under arrest for DUI and speeding; he explained that defendant's car would

---

[1] Dudek also witnessed defendant's vehicle swerve and cross a solid line.  Defendant was ultimately charged with DUI; however, as the jury found him not guilty of that charge, we will not recount here the evidence pertaining to the DUI charge.

be towed after the arrest. Defendant argued with Dudek, accused him of effectuating the stop based on defendant's race, and said that he would not exit his vehicle or allow it to be towed.

¶ 7    Dudek radioed for assistance and backup. Dudek testified that he informed defendant that, if he resisted, he would be arrested for obstructing a police officer. Dudek explained to defendant that, since he could not exit the car due to his physical limitations, Dudek was calling for paramedic assistance. Dudek testified that he wanted to accommodate defendant's physical limitations and not forcibly remove him from the vehicle. Further, Dudek testified that defendant's refusal to cooperate with him was also one of the reasons that he called for an ambulance. During the traffic stop, defendant had telephoned his wife and, when she arrived, Dudek enlisted her to try to obtain defendant's cooperation.

¶ 8    A video of the encounter was shown to the jury, and this court has reviewed it. It reflects that Dudek activated his lights and began following defendant at around 3:44 a.m. A backup officer arrived on the scene around 4:17 a.m., along with defendant's wife, and they, along with Dudek, appear to talk with defendant for a period before paramedics from the Elgin fire department arrive. Specifically, at around 4:40 a.m., paramedics arrive, Dudek speaks to them briefly (he testified that he explained that he needed their help to remove defendant from the vehicle so that he could be arrested), and the paramedics approach defendant's vehicle at approximately 4:42 a.m. They are seen talking with defendant for around 30 minutes before defendant is assisted out of his vehicle. Specifically, the video shows around a dozen people (two officers, possibly nine paramedics, and two civilians (including defendant's wife)) congregating on Interstate 90's right shoulder and talking with defendant; the far-right lane of the interstate was blocked off to traffic, as a stretcher rested in that lane awaiting defendant's transport. At 5:10 a.m., defendant is assisted out of his vehicle and onto the stretcher. Defendant was transported to the hospital and, later, to

the police station. At the station, defendant was cooperative and directed police how to assist him out of the vehicle.

¶ 9    Dudek testified that he was authorized to ask defendant to exit the vehicle and that he told defendant that, if he refused, he would be charged with resisting or obstructing a police officer. Defendant refused. During the 30 minutes that paramedics tried to convince defendant to exit the vehicle, Dudek testified that he continued to command defendant to exit with paramedic assistance and told him that his repeated refusals could result in obstruction charges.

¶ 10    Patrick Rasmussen testified that he is a firefighter and paramedic with the Elgin fire department. On July 7, 2018, he responded to the call to assist defendant out of his car. According to Rasmussen, also present were two engines, an ambulance, a battalion chief, and around nine paramedics. Rasmussen spoke to defendant, asking him to get out of the car and explaining that they were there in his best interests, not to harm him. Defendant responded that he did not want his vehicle towed and that it would have to be towed with him in it. Defendant was upset and agitated; he did not want to be touched or assisted and threatened to sue anyone who touched him. Specifically, defendant made it "difficult" and he "wouldn't let us put hands on him due to the fact that he would sue anyone who put a hand on him." Rasmussen testified that paramedics tried for around 30 minutes to convince defendant to voluntarily leave his vehicle. When defendant ultimately agreed, he directed the paramedics on how to help him. According to Rasmussen, "we allowed him to *direct us* in gently moving his legs out of the vehicle onto the pavement. And then assisting [defendant] in any way *he would allow us* to have him stand up pivot and sit back down onto the cot." Defendant exited the vehicle by using his right arm to push against the car door, his left arm under a paramedic's shoulder, and then a paramedic moved his legs onto the cot. The cot had been next to defendant's car door almost the entire time paramedics were on the scene.

¶ 11    Illinois State Trooper Michael Hague testified that he stopped to assist Dudek, and he talked with defendant. Defendant was informed that he would be arrested for DUI and became belligerent and did not want to exit the car. The State rested, and the court denied defendant's motion for a directed verdict.

¶ 12    Defendant's wife, Myrlene Holt, testified that she has been married to defendant for 20 years. As a result of a serious motorcycle accident, defendant is blind in his left eye, has plates in his pelvic region, a disc in the back of his neck and forearm, and rods and screws in his legs. Defendant is not able to stand on his own, uses a wheelchair, walker, or cane to get around, and takes a medication called Norco to alleviate his pain. Whenever defendant drives, Myrlene helps him get in and out of the vehicle.

¶ 13    Myrlene testified that, when she arrived at the scene, defendant was cooperative. He was not argumentative and was answering the officers' questions, but he was confused and did not understand why, when he was not intoxicated, he needed to be removed from the vehicle and the car towed.

¶ 14    Abdul Peterson testified that he is defendant's friend and was with defendant the night of July 6, 2018. Defendant picked up Peterson to go to an event in Evanston. When they arrived, Peterson and some friends helped defendant out of the vehicle and into the house. Defendant told them how to help carry him. Defendant had already dropped off Peterson at home on July 7, 2018, prior to defendant's interaction with police, so he did not witness defendant's behavior at the stop.

¶ 15    Dr. Alan Frydman testified that he is an internist at North Shore Medical Group and treats defendant for pain management. Frydman agreed that defendant received surgery on his upper and lower extremities, is unable to get out of his wheelchair or car on his own, and needs help from

a walker to a wheelchair. Frydman prescribed defendant Norco for pain management. The defense rested.

¶ 16 The jury instructions did not include a definitional instruction for a voluntary act, and the issues instruction did not include a voluntary element on the obstruction charge. Trial counsel did not object to the omissions in the instructions. The jury ultimately found defendant not guilty of DUI. However, it found him guilty of obstructing a peace officer and speeding. The court denied defendant's motion for judgment notwithstanding the verdict or for a new trial and sentenced defendant to 18 months' conditional discharge, 100 hours of community service, and costs and fines. Defendant appeals.

¶ 17                                     II. ANALYSIS

¶ 18                                     A. Sufficiency

¶ 19 Defendant argues first that his obstruction conviction should be reversed due to insufficient evidence that (1) he obstructed a peace officer; and (2) did so knowingly. Specifically, defendant contends that he did not obstruct Dudek because, on account of defendant's physical limitations, Dudek did not actually order or command defendant to immediately exit the car. Defendant notes that the complaint alleged obstruction on the basis that defendant, after receiving a lawful order, refused to exit his vehicle. However, defendant contends that Dudek's testimony rebuts that allegation, because he did not order defendant out of the car. Rather, Dudek sought defendant's voluntary cooperation and called for assistance to remove defendant from the vehicle. He argues, "[s]ince there was no order or command issued by a peace officer, there could not be a refusal to obey a command that was not issued." Moreover, defendant asserts that his alleged statements that he would not exit the car, would not let it be towed, and would not get out of the car if it were towed did not "impede or hinder Dudek in performance of his official duties in any way." He

asserts that there can be no obstruction unless his actions actually impeded an officer from performing an authorized act. Here, he contends, had he not had physical impairments, Dudek would have *forced* him to exit; however, as he did have physical limitations, Dudek chose to try to persuade cooperation instead of using compulsion. It was Dudek's *approach* that resulted in a delay of extricating him from the car, as opposed to defendant's own conduct. In other words, he argues, his "statements that he would not get out of the car or that he would stay in the car if it was towed had absolutely no impact on Trooper Dudek's course of conduct. Dudek would not have compelled [defendant] out of the vehicle regardless of [defendant's] expression of his willingness to stay in the car." For the following reasons, we reject defendant's arguments.

¶ 20    Preliminarily, we must clarify our standard of review. Defendant asserts that, because he relies primarily on testimony from the State's own witnesses for his arguments, our review should be *de novo*. We disagree. It is well established that, when a defendant challenges the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact is responsible for weighing the evidence and resolving conflicts in testimony, and we will not substitute our own judgment on those issues. *People v. Shenault*, 2014 IL App (2d) 130211, ¶ 14.

¶ 21    Turning to the merits of defendant's arguments, we disagree with defendant that, viewing the evidence in the State's favor, a reasonable jury could not have found obstruction beyond a reasonable doubt. A person commits the offense of resisting or obstructing a peace officer when he or she "knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity ***." 720 ILCS 5/31-1(a) (West 2018). Obstruction may include disobeying an

officer's command or refusing to comply, "as it can undoubtedly interfere with the completion of an officer's duty." *People v. Smith*, 2013 IL App (3d) 110477, ¶ 23.

¶ 22 Here, defendant seeks to cast Dudek's accommodation of defendant's physical limitations as somehow excusing defendant's resistance to, and lack of cooperation with, that accommodation. Dudek testified that he informed defendant that he was being arrested for DUI and speeding and, because of physical limitations precluding defendant from unassisted exit from his vehicle, an ambulance would be arriving to assist him. Defendant told Dudek that he would not leave his vehicle or allow it to be towed. Dudek responded that continued resistance could lead to obstruction charges. Yet, when the paramedics arrived, defendant continued to resist exiting the vehicle, even with assistance.

¶ 23 We do not find convincing defendant's attempt to cloud the timeline by focusing on when or if Dudek actually ordered defendant to exit the vehicle *before* paramedics arrived. The jury could have reasonably found that it did not matter whether Dudek ordered him to immediately exit, before calling for assistance, or whether it was not until after paramedics arrived that Dudek told defendant that, if he did not cooperate, he could face obstruction charges. Viewing the evidence in the State's favor, the jury could have found defendant resisted and obstructed Dudek's efforts to have him exit the vehicle with assistance to conclude the arrest. Indeed, the evidence demonstrated that, once the paramedics arrived, a myriad of personnel spent *30 minutes* talking with defendant and trying to coax his cooperation. According to Rasmussen, during that period, defendant refused to cooperate, said that they would have to tow his vehicle with him in it, and threatened to sue anyone who touched him, which made Rasmussen's efforts and those of all present "difficult." Dudek testified that he repeatedly told defendant that if he did not cooperate and allow assisted removal from the vehicle, he could be charged with obstruction.

¶ 24    As such, defendant's suggestion that the delay in his arrest was occasioned not by his own obstruction, but, rather, by Dudek's "choice" to seek his cooperation and to call for assistance, as opposed to forcibly removing him from the vehicle, is unconvincing.  Dudek respected defendant's physical limitations; defendant did not return that respect in kind.  Again, this court has watched the video of defendant's traffic stop.  For approximately 30 minutes, almost a *dozen* people, including firefighters, paramedics, State troopers, and defendant's family, gather on the shoulder of the expressway, subjecting themselves to risk of physical harm and blocking off an entire lane of traffic, apparently pleading with defendant to cooperate so that his arrest for DUI and speeding could be effectuated.  The jury could have reasonably credited testimony from Dudek, Rasmussen, and Hague, along with the video evidence, to find that defendant was, at a minimum, obstructive *after* assistance arrived and refused to obey instructions to exit with assistance.

¶ 25    We note that the jury could also have given great weight to evidence that, according to Rasmussen, defendant ultimately provided paramedics with directions as to how he would allow them to assist him from the vehicle.  Further, after he was transported from the hospital to the police station, defendant cooperated and provided instruction to two officers on how to assist him out of the vehicle.  Myrlene testified that she helps defendant in and out of his vehicle, presumably with his cooperation, and Peterson testified that defendant has instructed him and other friends on how to help defendant in and out of his car.  The jury could have compared this evidence with the events of defendant's arrest and reasonably concluded that defendant, when cooperative, is easily moved to and from his vehicle and, thus, on July 7, 2018, his actions instead reflected resistance and obstruction to Dudek's authorized duty to effectuate the traffic stop and arrest.

¶ 26    Finally, we note that defendant relies on *People v. Baskerville*, 2012 IL 111056, and *People v. Taylor*, 2012 IL App (2d) 110222, for the proposition that obstruction requires an *actual*

*impediment* to an officer's duties and, here, nothing he did actually impeded Dudek, because: Dudek knew that defendant could not exit the vehicle without assistance; he called for the assistance; and that assistance did, in fact, ultimately help defendant out of the vehicle. Defendant's reliance on these cases is unpersuasive. In *Baskerville*, the court determined that a defendant's lies had not, in fact, impeded or hindered the officer's investigation and that the obstruction conviction was, therefore, improper. *Baskerville*, 2012 IL 111056, ¶¶ 35-36. In *Taylor*, an obstruction conviction was reversed where the defendant's attempted obstruction did not impede the police in any material way. *Taylor*, 2012 IL App (2d) 110222, ¶ 17. However, our supreme court in *Baskerville* also noted that the focus of an obstruction charge is the "tendency of the conduct to interpose an obstacle that *impedes or hinders* the officer in the performance of his authorized duties." (Emphasis added.) *Baskerville*, 2012 IL 111056, ¶ 23. It noted that "hinder" means to make slow or difficult the course of progress, while "impede" means to interfere with or get in the way of progress. *Id.* ¶ 19. The court explained that a defendant's action has "legal significance if it was made in relation to an authorized act within the officer's official capacity" and if the action "actually impeded an act the officer was authorized to perform." *Id.* ¶ 35.

¶ 27 Here, the evidence sufficed for the jury to reasonably find beyond a reasonable doubt that defendant's actions in fact hindered and impeded Dudek in his authorized acts of effectuating the traffic stop and arresting defendant. Again, defendant glosses over the fact that, after Dudek informed defendant that he was to be arrested and his vehicle towed, defendant said he would not leave the vehicle or allow it to be towed, spent approximately 30 minutes informing paramedics that he would not allow their assistance and would sue anyone who touched him, and that the car would have to be towed with him in it. The time that defendant spent resisting exit from the vehicle

delayed Dudek's ability to effectuate the arrest, tow the vehicle, and delayed numerous officials, including State troopers, firefighters, and paramedics, from returning to other official duties.

¶ 28    We also disagree with defendant that the State failed to prove the requisite mental state, namely, that he *knew* failing to get out of the car constituted obstruction. Again, defendant contends that Dudek did not order or command him out of the car, was conciliatory toward him because of his disabilities, and explained that paramedics would assist him. He asserts, "[p]aramedics eventually eased [him] out of the car cognizant that [he] was vulnerable because of his physical condition." As such, defendant asserts that the evidence did not establish that he was consciously aware that he was obstructing Dudek, since Dudek essentially told him he did not need to immediately exit the vehicle.

¶ 29    Again, defendant asserts simply that paramedics "eased" him out of the vehicle, conveniently ignoring that they did so only after 30 minutes of seeking defendant's cooperation. He also ignores evidence that, even if Dudek did not tell him to immediately exit the vehicle unassisted, he *did* tell defendant that he was under arrest, that an ambulance would assist his exit from the vehicle, and that continued resistance could result in obstruction charges. A jury could have reasonably found that the State met its burden to establish that defendant acted knowingly.

¶ 30    In sum, the evidence was sufficient to sustain defendant's obstruction conviction.

¶ 31                                B. Plain Error

¶ 32    Defendant argues next that the law does not impose criminal responsibility for involuntary acts, and, because he was physically unable to exit the car unassisted, his failure to exit the vehicle was an involuntary act, negating the obstruction charge. See, *e.g.*, 720 ILCS 5/4-1 (West 2018) ("A material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he [or she] is physically capable of

performing."). He contends that trial counsel, however, did not present to the jury definitional or issues instructions for an *involuntary* act, which would have allowed it to acquit defendant through his affirmative defense of impossibility. Defendant notes that his witnesses established that he suffered from extensive physical disabilities that significantly impacted his mobility. As such, defendant contends, where he was accused of a criminal omission or failure to act, but could not do so, he was entitled to raise impossibility as a defense, and the State then bore the burden to prove beyond a reasonable doubt that it was possible for defendant to have complied with the legal duty. See, *People v. Costello*, 2014 IL App (3d) 121001, ¶ 14. Given that he was entitled to raise the defense, and jury instructions must convey to the jury the law that applies to the evidence, defendant contends that the jury should have received the pattern instruction for "Omission As Voluntary Act." See Illinois Pattern Jury Instructions, Criminal, No. 4.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 4.14) ("A voluntary act includes an omission to perform a duty which the law imposes on a person and which that person is physically capable of performing."). Instead, defendant notes that the issues instruction here contained only the following:

"To sustain the charges of resisting and obstructing a peace officer, the State must prove the following propositions:

*First Proposition*: That Trooper Dudek was a peace officer; and

*Second Proposition*: That the defendant knew Trooper Dudek was a peace officer; and

*Third Proposition*: That the defendant knowingly resisted or obstructed the performance by Trooper P. Dudek of an authorized act within his official capacity.

- 12 -

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 33    Defendant argues that, because this issue instruction did not include IPI Criminal 4th No. 4.14's explanation of omission as a voluntary act, which would have encapsulated his impossibility defense, there exists plain instructional error.  According to defendant, "[t]he jury should have received an [IPI Criminal 4th No. 4.14] instruction defining a voluntary act *and argument from trial counsel that [defendant's] omissions were involuntary*, thus absolving [defendant] of criminal liability because of physical impossibility." (Emphasis added.)  Defendant argues that counsel should have also tendered an instruction requiring the jury to find beyond a reasonable doubt that any knowing omission on his behalf was voluntary.

¶ 34    Defendant acknowledges that, as trial counsel did not tender the jury instructions, did not object to the absence of such instructions, and did not raise the issue in a posttrial motion, the instructional issue is forfeited.  See, *e.g.*, *People v. Sebby*, 2017 IL 119445, ¶ 48 (to preserve issue for appeal, a defendant must object at trial and raise the issue in a posttrial motion).  However, he argues that we should review the issue under the substantial-defects rule in Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) (creating an exception to forfeiture when jury instructions have substantial defects) and the plain-error rule in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967).  See *People v. Sargent*, 239 Ill. 2d 166, 189 (2010) (the forfeiture exception in Rule 451 is coextensive with Rule 615(a)'s plain-error rule.).  Indeed, the plain-error doctrine allows a

reviewing court to consider unpreserved error where either (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). However, under either prong, the defendant must first establish that a clear or obvious error occurred. *People v. McLaurin*, 235 Ill. 2d 478, 497-98 (2009). We review *de novo* whether jury instructions accurately stated the applicable law. See, *e.g.*, *People v. Getter*, 2015 IL App (1st) 121307, ¶ 36.

¶ 35    Defendant argues that the instructional error satisfies both first-prong plain error, because the evidence was close and merely a credibility contest between the witnesses, and second-prong plain error, because it created a serious risk that the jury did not understand the applicable law. We disagree, however, that the omission from the jury instructions of an instruction concerning the affirmative defense of impossibility even constitutes error. Again, defendant asserts that, where the evidence reflected that his injuries were so debilitating that it was physically impossible for him to exit the car "under his own power," it was error for counsel to fail to present an instruction on the affirmative defense of impossibility. The problem with defendant's argument is that, considering the totality of the trial evidence and argument, the "impossibility" of defendant's ability to exit the vehicle "under his own power" or *unassisted* was not the issue. Rather, with respect to the statutory requirement that defendant's obstruction and resistance be "voluntary," the trial evidence concerned his cooperation with *assisted* exit from the vehicle. "In Illinois, the parties are entitled to have the jury instructed on *the issues presented*, the principles of law to be applied, and the necessary facts to be proved to support its verdict." (Emphasis added.) *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). Indeed, defendant asserts that his counsel should have provided *argument* that defendant's omissions were involuntary. As the issue at trial was defendant's refusal to comply with Dudek's command after his physical limitations were

*accommodated*, the affirmative defense of impossibility was simply not supported by the evidence and there was no error in the omission of IPI Criminal 4th No. 4.14. In sum, as there was no error, we honor the procedural default.

¶ 36                                    C. Ineffective Assistance

¶ 37    Finally, defendant argues that trial counsel's failures to provide instructions, as argued above, constitute ineffective assistance. Specifically, he contends that, by presenting evidence that it was physically impossible for defendant to exit the vehicle unassisted, but failing to tender definitional and issues instructions to allow the jury to acquit based on the affirmative defense of impossibility, counsel rendered deficient performance. Further, defendant argues that, but for counsel's deficient performance, the jury would have understood that the State was required as a matter of law to prove beyond a reasonable doubt that defendant was physically capable of exiting the car. Without the proper instructions, defendant contends, the jury could not have realized that the State did not satisfy this burden. As such, he contends that the jury was deprived of instructions necessary for a fair trial.

¶ 38    To state a claim for ineffective assistance of counsel, defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness (performance prong) and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different (prejudice prong). See *People v. Simpson*, 2015 IL 116512, ¶ 35; *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Defendant must satisfy both prongs of the *Strickland* test; a failure to satisfy either prong defeats the claim. *Simpson*, 2015 IL 116512, ¶ 35.

¶ 39    Here, defendant's ineffective-assistance claim fails, as his counsel's failure to request or submit an instruction on voluntariness or to support his alleged affirmative defense of impossibility was not objectively unreasonable. For the reasons previously discussed, there was no issue that defendant was unable to exit the vehicle unassisted; rather, the issue was whether he voluntarily refused to exit even with assistance. Counsel cannot be ineffective for not requesting a jury instruction that defendant was not entitled to and that did not address an issue in the case. See, *e.g.*, *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14. As counsel's performance was not deficient, defendant was not prejudiced by it, and his ineffective-assistance claim fails on both *Strickland* prongs.

¶ 40                                        III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 42    Affirmed.